UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BUNGE NORTH AMERICA, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:24-cv-00042-HEA ) |
| AGRI PROCESS INNOVATIONS, INC. et al., | ) ) ) |
| Defendants. | ) ) |

# OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant AGRI Process Innovations, Inc.'s Motion to Dismiss Count III.  [Doc. 10].  Plaintiff opposes the motion. [Doc. 21].  The motion is fully briefed and ready for disposition.  For the reasons stated below, the motion is granted.

## BACKGROUND[1]

This lawsuit involves the collapse of an 800,000-bushel grain bin located at the LaGrange Elevator (the "Bin").  [Doc. 1 ¶ 10].  Bunge North America, Inc. ("Bunge") retained AGRI Process Innovations, Inc. ("API") to design and prepare plans for a roll-up loader door to be installed in the Bin at ground level.  [*Id.* ¶¶ 12,

---

[1] The facts are taken from the Complaint and accepted as true for purposes of this motion. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

23]. API provided completed design drawings for the Bin in August 2018. [*Id.* ¶ 24].

Bunge removed all grain from the Bin leaving it empty and ready for the new loader door; the Bin had been loaded to near capacity before it was emptied. [*Id.* ¶ 13]. Lawson Rigging & Fabrication, LLC ("Lawson") fabricated and installed the new loader door in the Bin in August or September 2018. [*Id.* ¶¶ 4, 14]. Lawson's work included cutting a space for the doorframe, welding the doorframe to the wall of the Bin, and installing the door. [*Id.*]. SKS Engineers, LLC ("SKS") inspected Lawson's welds after installation of the door. [*Id.* ¶¶ 5, 15].

With the loader door installed and inspected, Bunge began gradually filling the Bin to near capacity in the days leading up to the collapse. [*Id.* ¶ 17]. On March 11, 2019, the Bin collapsed and spilled nearly 45 million pounds of corn across LaGrange's main street, to the railroad on the other side of the road, and into the Mississippi River. [*Id.* ¶ 18]. The sudden release damaged numerous nearby buildings and destroyed other buildings, truck scales, and truck dumps. [*Id.*]

A subsequent investigation revealed the original fracture that caused the collapse began at the loader door's upper west corner. [*Id.* ¶ 19]. Additionally, the investigation revealed that even if Lawson's welds on the new door had been

perfect, the loader door as designed would have failed once the Bin was loaded to capacity or near capacity—and under some circumstances, long before the Bin was loaded halfway. [*Id.* ¶ 29].

Bunge filed this action against API, Lawson, and SKS alleging nine claims. The claims against API include Negligence (Count I), Professional Negligence (Count II), and Breach of Express or Implied Warranty (Count III). Defendant API filed the instant motion pursuant to Federal Rule of Civil Procedure 12(b)(6) seeking dismissal of Count III for failure to state a claim. [Doc. 10].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief may be granted. When considering a Rule 12(b)(6) motion, a court assumes a plaintiff's well-pled factual allegations to be true and makes all reasonable inferences in the plaintiff's favor. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019). But a court does not accept as true legal conclusions or "threadbare recitals of the elements of a cause of action supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

To survive a Rule 12(b)(6) motion, a complaint must allege sufficient facts to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If a claim fails to

3

allege one of the elements necessary to recovery on a legal theory, the Court must dismiss that claim. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).

## DISCUSSION

In Count III of the Complaint, Bunge alleges that API, in preparing drawings for the Bin door, "warranted, either explicitly or implicitly, that it would perform all work in a safe and workmanlike manner. . . ." [Doc. 1 at 8 ¶ 40]. Bunge asserts API breached its express and implied warranties because the drawings it provided constituted a deficient design that was destined to fail. [*Id.* ¶ 43]. More specifically, Bunge alleges API failed to assess and account for the Bin's size and dimensions. [*Id.*].

API argues Count III should be dismissed for failure to state a claim for breach of express or implied warranties because: "(1) allegations pertaining solely to design defects are incapable of stating claims of breach of express warranty; (2) Bunge does not allege that API made any express (or implied) affirmations of fact pertaining to the quality of any goods; (3) Bunge does not allege the means by which any express warranties were communicated to it by API; and (4) Missouri courts do not recognize claims of breach of implied warranty against engineers." [Doc. 10 ¶ 10].

4

In its response to API's motion, Bunge submitted two documents: (1) a purchase order from AP Fabrications, LLC related to a "Silo Slide Up Door Fab and Install" in East Hannibal, Illinois dated May 30, 2018, [Doc. 21-1]; and (2) a construction Agreement between Bunge and AP Fabrications, LLC with regard to a project located in Lake Providence, Louisiana with an invoice dated June 4, 2018, [Doc. 21-2]. Although Bunge concedes it has not identified a purchase order or construction agreement pertaining to the LaGrange project, it argues the Court should infer express warranties based on the other projects. [Doc. 21 at 2]. Further, Bunge argues that Missouri law provides for implied warranties regardless of whether there is a contract. [*Id.* at 4].

Because API provided a service—designing and preparing plans for the Bin door—the Missouri Uniform Commercial Code does not apply. *See Busque v. Heck*, 587 S.W.3d 703, 707 (Mo. App. S.D. 2019) (citing *Missouri Farmers Ass'n v. McBee*, 787 S.W.2d 756, 760-61 (Mo. App. W.D. 1990) ("the UCC appl[ies] only to transactions in goods … [it] does not apply to service transactions."). The issue, therefore, is whether Bunge states a claim under Missouri common law for breach of express and/or implied warranties. This Court's determination of Missouri law "is not to formulate the legal mind of the state, but merely to ascertain and apply it." *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 826 (8th Cir. 1983).

5

### *Breach of Express Warranty*

"In actions on warranties that are not governed by the Uniform Commercial Code, such as actions on express warranties made in connection with a contract for services, the elements of these actions include:"

1) all essential elements of a contract (i.e., parties with capacity, lawful and definite subject matter, consideration);

2) an affirmation or representation of fact by one party relating to the subject matter of the contract; reliance on the affirmation or representation by the other party;

3) falsity or inaccuracy of the affirmation or representation; and

4) damage to the other party as a result of the false or inaccurate affirmation or representation.

§ 9:2. Elements of the action, 35 Mo. Prac., Cont., Eq. & Stat. Actions Handbook.

Bunge concedes that it has not identified a purchase order or construction agreement pertaining to the door.  [Doc. 21 at 2].  Bunge argues the Court should infer express warranties based on a course of dealings between the parties.  However, it offers no authority permitting such an inference under the circumstances.  Moreover, API is not a party to either document on which Bunge relies–the vendor on the purchase order and the contractor in the construction agreement is AP Fabrications, Inc.  [Docs. 21-1, 21-2].  Without a contract between the parties, or any statement by API that Missouri law would recognize as an express warranty, Bunge's breach of express warranty claim fails as a matter of law.

6

### *Breach of Implied Warranty*

In *Captiva Lake Invs., LLC v. Ameristructure, Inc.*, the court held that implied warranties do not apply to service contracts or commercial structures.  436 S.W.3d 619, 629 (Mo. App. E.D. 2014).  In that case, the owner of a condominium project sued an architect and his employer, who provided architectural and engineering services, for breach of implied warranty.  *Id.* at 622-23.  The defendants were not involved in the construction of the condominium project; they provided only architectural plans.  *Id*. at 622.  There is no mention of the UCC in the court's opinion, and the court distinguished implied warranty claims under common law against builder vendors.  It follows, therefore, that the court's decision was based on common law.

In *Chubb Group of Ins. Cos. v. C.F. Murphy & Assocs., Inc.*, the court affirmed the dismissal of a breach of implied warranty claim against an architectural firm and other defendants on the grounds that Missouri law has not extended a breach of implied warranty claim to non-residential commercial buildings.  656 S.W.2d 766, 782 (Mo.App. W.D. 1983); *see also Volume Servs., Inc. v. C.F. Murphy & Assocs., Inc.*, 656 S.W.2d 785, 793 (Mo. App.  W.D. 1983) (companion case).

In support of its claim, Bunge relies on two cases – *O'Dell v. Custom Builders Corp.*, 560 S.W.2d 862 (Mo. 1978) and *Kennedy v. Bowling*, 4 S.W.2d

7

438 (Mo. banc 1928). However, *O'Dell* and *Kennedy* are distinguishable from the instant case. In those cases, liability was imposed for defective design plans, but the implied warranty claim arose out of a contract to design and build. *O'Dell*, 560 S.W.2d at 870-71; *Kennedy*, 4 S.W.2d at 440, 443, 446. The defendants were construction companies, not architects or engineers.

The breach of implied warranty claim recognized in *O'Dell* and *Kennedy* is not applicable here. Instead, Missouri courts have recognized that "[a]n architect is not a guarantor or an insurer but as a member of a learned and skilled profession he is under a duty to exercise the ordinary, reasonable technical skill, ability and competence that is required of an architect in a similar situation. . . ." *Chubb Group,* 656 S.W.2d at 774 (*quoting Aetna Ins. Co. v. Hellmuth, Obata & Kassabaum, Inc.,* 392 F.2d 472, 476–77 (8th Cir.1968)). In that regard, an architect has a "common law duty to provide architectural services in a professional manner" and is subject to tort liability in professional negligence. *Business Men's Assurance Co. of America v. Graham*, 891 S.W.2d 438, 453-54 (Mo. App. W.D. 1994).

Based on the foregoing, Bunge's breach of implied warranty claim fails as a matter of law. Further, because Count III fails to state a claim for breach of express or implied warranty, API's motion is granted and Count III is dismissed.

8

Accordingly,

**IT IS HEREBY ORDERED** that Defendant AGRI Process Innovations, Inc.'s Motion to Dismiss Count III, [Doc. 10], is **GRANTED** and Count III is **DISMISSED with prejudice**.

Dated this 31st day of March, 2025.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE